IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHAEL LAVONN SNOWDEN,

    Plaintiff,

v.                                      Civil Action No. 3:19CV42

M. RIOS, et al.,

    Defendants.

**MEMORANDUM OPINION**

Michael Lavonn Snowden, a Virginia prisoner proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action.[1] The action proceeds on the PARTICULARIZED COMPLAINT. (ECF No. 9.) The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. As discussed below, the action will be dismissed as legally frivolous and for failure to state a claim upon which relief may be granted.

---

[1] The statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

I.  **PRELIMINARY REVIEW**

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); see 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they

are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," id. (citation omitted), stating a claim that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp., 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)

(citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS AND CLAIMS

Snowden faults law enforcement officials, the prosecutor and his defense attorneys for perceived unconstitutional errors in his arrest and criminal proceedings in state court.[2] Snowden's Particularized Complaint is comprised primarily of a recitation of

---

[2] Although Snowden does not provide many details about his criminal proceedings, the Circuit Court for the City of Portsmouth, Virginia's public docket indicates that Snowden was convicted of statutory burglary and larceny, third plus offense, on March 21, 2017, for offenses that occurred on June 17, 2016. See http://www.courts.state.va.us/main.htm (select "Case Status and Information;" select "Circuit Court" from drop-down menu; select hyperlink for "Case Information;" select "Portsmouth Circuit Court" from drop-down menu and select "Begin" button; select "Criminal" division; type "Snowden, Michael Lavonn" and select "Search by Name" button; select hyperlinks for "CR16000915-01" and CR16000915-2 under "Case Number" heading).

legal standards with sparse factual allegations in support. Snowden contends that:[3]

> Officer M. Rios participated in violating Plaintiff's Fourth Amendment rights on June 17, 2016, when he illegally seized his person denying him equal protection of the law; all under the guise of officers in search of (3) robbery suspects. Officer M. Rios obstructed justice after having been subpoena[ed] to attend and testify. But because of conspiratorial actions did not and violated Plaintiff's Sixth Amendment right by not allowing him to confront his accuser, who was an arresting officer.
> Det. C. Matherson, also on the night of June 17, 2016, unlawfully ran Plaintiff down (which is not against the law) and apprehended him. This is a Fourth Amendment violation of his person being secure. [He] then furthered constitutional violations with the Fifth Amendment in his engaging to do, and cause, in this object of conspiracy, by not processing an alleged crime scene for material evidence that was exculpatory in nature, causing the due process of law violation.
> Sgt. J. Yunker was the 3rd officer on the night of June 17, 2016, who was in joint participation in the Plaintiff's unlawful seizing of his own person, violating this security that is to be protected by the Fourth Amendment. In addition, with the title and rank in the forensic unit, [he] should have processed the alleged crime scene if in fact he was not trying to deny a U.S. citizen equal protection that the law affords. Thus, securing his participation in violating Plaintiff's Fifth Amendment due process of law.
> [The] Portsmouth Police Department is responsible for the conspiratorial actions by their officers who were hired, trained, and bonded in order to ensure the security of equal protections of law. But one June 17, 2016, [the] Portsmouth Police Department is responsible and liable for the Fourth Amendment and Fifth Amendment violations against this Plaintiff while on duty in uniform under their shield.

---

[3] The Court corrects the capitalization, spelling, and punctuation in the quotations from Snowden's Particularized Complaint. The Court omits the emphasis and numbering from the Particularized Complaint.

5

Det. D. Misiewicz, 54 min after the illegal chase and capture of the intoxicated Plaintiff; [she] interrogated, Mirandized, and forged initials and signature on the Miranda form. Thus, violating Plaintiff's Sixth Amendment right, because he did not give her power of attorney to do so. Also Det. D. Misiewicz violated his equal protection under the law, violating Plaintiff's Fifth Amendment due process of law.

Brandon Wrobleski in his conspiratorial actions that are in support of denying Plaintiff with the equal protection of the law. Brandon Wrobleski knew about the witness subpoena issued to Officer M. Rios and all other parties involved. But behind his malicious prosecutorial misconduct towards a citizen, [he] became engrossed and was not able to seek out justice, acts of impeachment, or credibility as he swore under oath to uphold, but instead opted to violate Plaintiff's Fifth and Sixth Amendment rights.

Sgt. R. McDaniel attested to a grand jury about events that he had no direct knowledge of, denied Plaintiff the right to confront or rebut anything that was brought before the court, violating his Sixth and Fifth Amendment constitutional right to confront his accuser along with the due process of law.

Johnita Coston failed to protect the remedies of due process law and the equal protection under the law and did not protect Plaintiff's representation of fact. She furthered the conspiratorial tactics attached to M. Rios, officer, when she did not make it known to Plaintiff that his right to confront his accuser was violated but instead tried to cover it up, violating his Sixth Amendment [right], and did not protect the legal process without exception violating Plaintiff's Fifth Amendment right.

W. McMillan Powers continued to further the conspiratorial actions that originated with Officer M. Rios. He denied Plaintiff the rights under the equal protection under the law as would any other citizen may have received. He has denied the Plaintiff due process of law and did not represent the tier of fact necessary to avoid a Fifth Amendment violation, as well as the Sixth Amendment in denying the Plaintiff the knowledge of the nature and cause.[4]

---

[4] Although it is not entirely clear from the Particularized Complaint, Snowden's original Complaint identifies Johnita Coston

6

(Part. Compl. 2-5.) Plaintiff states his claims for relief as follows:

Claim One: "Fourth Amendment violations[:] Officer M. Rios, Det. C. Matherson, Sgt. J. Yunker, [and the] Portsmouth Police Department, all violated Plaintiff's constitutional right under this section through the illegal seizure of his person, by the physical restraint and freedom of movement. All under the authority and bonding of [the] Portsmouth Police Department." (Id. at. 5.)

Claim Two: Fifth Amendment violations[:] Det. C. Matherson, Sgt. J. Yunker, [the] Portmouth Police Department, Det. D. Misiewicz, Brandon Wrobleski, Sgt. R. McDaniel, Johnita Coston, [and] W. McMillan Powers all violated Plaintiff's due process of law right under this section, but not affording equal protections under the law, not processing crime scene, negligent training by Portsmouth Police Department, the conspiratorial actions of listed that can be said to be considered "mixed war" with a citizen." (Id. at 5-6.)

Claim Three: Sixth Amendment violation[:] Officer M. Rios, Det. D. Misiewicz, Brandon Wrobleski, Sgt. R. McDaniel, Johnita Coston, W. McMillan Powers all violated Plaintiff's constitutional rights under this section by not allowing the Plaintiff the right to confront his accuser at any point when subpoena[ed], or was not allowed to represent fact against what an accuser attested to. Det. M. Misciewicz was not given power of attorney to utilize initials and signature of Plaintiff on Miranda warning form; neither afford equal protection of and denied Plaintiff knowledge of the nature and cause of the accusations against him." (Id. at 6.)

---

and W. McMillan Powers as lawyers and Brandon Wrobleski as a prosecutor. (ECF No. 1, at 3.)

7

Although Snowden failed to identify the relief he seeks in his Particularized Complaint other than asking "that relief sought will be in favor of the Plaintiff with acceptance and mercy," in his original Complaint he asks for monetary damages and "release from prison." (ECF No. 1, at 10.)

### III. ANALYSIS

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). It is both unnecessary and inappropriate to engage in an extended discussion of the lack of merit of Snowden's theories for relief. See Cochran v. Morris, 73 F.3d 1310, 1315 (4th Cir. 1996) (emphasizing that "abbreviated treatment" is consistent with Congress's vision for the disposition of frivolous or "insubstantial claims" (citing Neitzke v. Williams, 490 U.S. 319, 324 (1989))). As discussed below, Snowden's claims against the three attorneys fail because defense attorneys are not proper parties under § 1983 and prosecutors are generally immune from suit. Moreover, claims seeking invalidation of Snowden's conviction and sentence are barred by Heck v. Humphrey, 512 U.S. 477 (1994), and any Fourth Amendment claim for

8

damages that may withstand Heck is barred by the statute of limitations.

    A.   **Claims Against Defense Attorneys**

Snowden faults his defense attorneys Johnita Coston and W. McMillan Powers for various perceived errors in his criminal proceedings. However, private attorneys and public defenders do not act under color of state or federal authority when they represent defendants in criminal proceedings. See, e.g., Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); Cox v. Hellerstein, 685 F.2d 1098, 1099 (9th Cir. 1982) (holding that private attorneys do not act under color of state or federal law when representing clients). Therefore, Snowden's claims against Coston and Powers are both legally frivolous and fail to state a claim upon which relief may be granted.

    B.   **Prosecutorial Immunity**

Prosecutorial immunity bars Harrison's claims against Brandon Wrobleski. See Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Prosecutorial immunity extends to actions taken while performing "the traditional functions of an advocate," Kalina v. Fletcher, 522 U.S. 118, 131 (1997) (citations omitted), as well as functions that are "intimately associated with the judicial phase of the

9

criminal process." Imbler, 424 U.S. at 430. To ascertain whether a specific action falls within the ambit of protected conduct, courts employ a functional approach, distinguishing acts of advocacy from administrative duties and investigative tasks unrelated "to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (citation omitted); Carter v. Burch, 34 F.3d 257, 261-63 (4th Cir. 1994). Absolute immunity protects those "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and those which occur in the course of his role as an advocate for the State." Buckley, 509 U.S. at 273.

Snowden fails to plead facts plausibly suggesting that Wrobleski's purported actions were taken outside of his role as an advocate for the state in his criminal prosecution. See Imbler, 424 U.S. at 430 (holding that prosecutorial immunity extends to prosecutor's actions "in initiating a prosecution and in presenting the State's case"); Carter, 34 F.3d at 263 (explaining that "although the trial had been completed, [the prosecutor's] functions in representing the State in . . . post-conviction motions . . . very much implicated the judicial process . . .") Thus, Wrobleski is immune from liability under § 1983. Accordingly, and any claim against Wrobleski is both legally

frivolous and fails to state a claim upon which relief may be granted.

### C. Claims Barred By Heck v. Humphrey, 512 U.S. 477 (1994)

The remaining claims are those against various law enforcement officials. In Claim One, Snowden contends that Officers M. Rios, Det. C. Matherson, Sgt. J. Yunker, and the Portmouth Police Department violated his Fourth Amendment rights. In Claim Two, Snowden contends that Matherson, Yunker, the Portsmouth Police Department, Det. D. Misiewicz, and Sgt. R. McDaniel violated his due process rights by "not affording equal protections under the law, not processing the crime scene, [and] negligent training." (Part Compl. 5.) Finally, in Claim Three, Snowden faults Rios, Misiewicz, and McDaniel for "not allowing [Snowden] to confront his accuser" and "not allow[ing Snowden] to represent fact against what the accuser testified to." (Id. at 6.) Snowden also contends that Misiewicz "was not given power of attorney to utilize initials and signature of Plaintiff on Miranda warning form." (Id.)

The basic premise behind Snowden's complaint, that he can vacate or alter his criminal conviction and obtain monetary damages stemming from his purportedly improper incarceration, through a civil lawsuit "is legally frivolous under Heck v. Humphrey, 512 U.S. 477 (1994), and related cases." Payne v. Virginia, No. 3:07CV337, 2008 WL 1766665, at *2 (E.D. Va. Apr. 17, 2008).

11

In Heck, the Supreme Court emphasized that civil tort actions are "not appropriate vehicles for challenging the validity of outstanding criminal judgments." Heck, 512 U.S. at 486. The Supreme Court then held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Heck, 512 U.S. at 486-87 (internal footnote omitted). The Supreme Court then required that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487.

The Supreme Court has extended Heck to civil rights actions that do not directly challenge confinement, but instead contest procedures which necessarily imply unlawful confinement. See Edwards v. Balisok, 520 U.S. 641, 646 (1997). In Balisok, the Supreme Court concluded that a challenge based upon the purported bias of the decision-maker, necessarily implied the invalidity of the sanction imposed by the decision-maker and thus was subject to

12

the bar announced in Heck. The Supreme Court summarized that Heck and the related cases teach that:

> [A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—<u>if</u> success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

Heck and related cases bar Snowden's claims seeking monetary damages because success on the action would necessarily imply the invalidity of his convictions. See Wilkinson, 544 U.S. at 79 (citing Preiser v. Rodriguez, 411 U.S. 475, 489 (1973)). Snowden also does not indicate that the state court has invalidated his current convictions. Heck, 512 U.S. 486-87. Thus, Snowden's claims challenging his guilt of the charges and his arrest are legally frivolous. Wilkinson, 544 U.S. at 81-82; see Preiser, 411 U.S. at 500 (holding that writ of habeas corpus is the sole federal remedy when an inmate challenges the fact of imprisonment and relief sought is finding that the inmate is entitled to release); cf. Brooks v. City of Winston-Salem, 85 F.3d 178, 183-84 (4th Cir. 1996) (noting that to state a plausible § 1983 claim of malicious prosecution for unreasonable seizure of the person in violation of the Fourth Amendment, the defendant must have "seized [plaintiff] pursuant to legal process that was not supported by probable cause and . . . the criminal proceedings [must have] terminated in

[plaintiff']s favor"). Accordingly, Heck bars Harrison's claims against Rios, Matherson, Yunker, Misiewicz, McDaniel, and the Portsmouth Police Department in Claims One, Two, and Three.

Of course, the Supreme Court has noted that certain Fourth Amendment claims for damages potentially may be raised in a § 1983 action. See Heck, 512 U.S. at 487 n.7.[5] No need exists to extensively explore the applicability of Heck to Snowden's inchoate Fourth Amendment claim (Claim One) for damages because his Fourth Amendment claim is barred by the statute of limitations.

**B. Claim One Is Untimely**

Under 28 U.S.C. § 1915(e)(2), the Court must dismiss claims which the relevant statute of limitations clearly bars. Brown v. Harris, No. 3:10CV613, 2012 WL 12383, at *1 (E.D. Va. Jan. 3, 2012) (citing Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655-57 (4th Cir.2006); Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)). Because no explicit statute of limitations for

---

[5] The Court explained:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in trial resulting in the § 1983 plaintiff's still outstanding conviction. Because of doctrines like independent source and inevitable discovery and especially harmless error, . . . such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.

Heck, 512 U.S. at 487 n.7 (internal citations omitted).

42 U.S.C. § 1983 actions exists, the courts borrow the personal injury statute of limitations from the relevant state. Nasim, 64 F.3d at 955 (citing Wilson v. Garcia, 471 U.S. 261, 266-69 (1985)). Virginia applies a two-year statute of limitations to personal injury claims. See Va. Code Ann. § 8.01-243(A) (West 2014). Hence, Snowden should have filed his Complaint within two years from when the underlying claims accrued. "A claim accrues when the plaintiff becomes aware of his or her injury, United States v. Kubrick, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." Almond v. Sisk, No. 3:08cv138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (omission in original) (quoting Nasim, 64 F.3d at 955).

Snowden filed his original Complaint on January 4, 2019.[6] Thus, for Snowden's claims alleging an invalid seizure of his person to be timely, the claims must have accrued after January 4, 2017. The Complaint fails to contain any facts indicating that Snowden's claims accrued after January 4, 2017. Instead, Snowden clearly indicates that he challenges his illegal seizure on June 17, 2016, and his claims would have accrued as of that day. (See Part. Compl. 2-3.) Thus, any challenge to his seizure is untimely. See Hornback v. Lexington-Fayette Urban Cnty. Gov't, 543 F. App'x

---

[6] This is the day that Snowden dated his letter that accompanied his original Complaint. (ECF No. 1-1, at 1.)

499, 502 (6th Cir. 2013); Smith v. McCarthy, 349 F. App'x 851, 857 (4th Cir. 2009) (finding § 1983 claims challenging search and seizure untimely because claims accrued as of date of search). Accordingly, Claim One is also barred by the statute of limitations and will be dismissed as legally frivolous.

## IV. CONCLUSION

Accordingly, Snowden's claims and the action will be dismissed with prejudice for failure to state a claim and as legally frivolous. The Clerk will be directed to note the disposition of the action for the purposes of 28 U.S.C. § 1915(g). Snowden's claims and the action will be dismissed.

/s/ REP

Robert E. Payne
Senior United States District Judge

Date: July 1, 2019
Richmond, Virginia

16